[Civ. No. 2564.  Second Appellate District, Division One.—February 3, 1920.]

## PACIFIC HEATER MANUFACTURING COMPANY (a Corporation), Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] COMMON CARRIERS—INJURY TO GOODS IN TRANSIT—RIGHTS OF SHIPPER AND CONSIGNEE TO REFUSE TO RECEIVE THEM—DAMAGES. As a general rule, the doctrine that where goods are injured the owner may abandon them as for a total loss and sue for their value does not apply to contracts of affreightment. The fact that goods are injured upon the journey, through causes for which the carrier is responsible, does not of itself justify the consignee in refusing to receive them, but he must accept them and hold the carrier responsible for the injury. Where, however, the damage is such that the entire value of the goods is destroyed, the consignee may refuse to receive them and sue the carrier for their value.

[2] ID.—MEASURE OF DAMAGES—EVIDENCE—VERDICT.—In an action for damages for injury to certain gas furnaces while being transported by the defendant, where the testimony of a competent witness shows that the furnaces, in their condition as received at the point of destination, had no market value whatever, that the repairs necessary to put them in condition to be sold would not have restored them more than fifty per cent of their market value, and the cost of the repairs would have been more than that fifty per cent, the jury is justified in concluding that the value of the property was totally destroyed; and if the amount of the judgment rendered does not exceed the original market value of the property, a claim that the damages awarded are excessive cannot be sustained.

[3] ID.—LIMITATION OF LIABILITY OF CARRIER—FAILURE TO TENDER ISSUES OR REQUEST INSTRUCTIONS—AFFIRMANCE OF JUDGMENT.— Where such an action is tried upon the theory that the defendant is to be bound by its ordinary liability as a common carrier (no special contract relieving defendant from liability being set forth in its answer), and the defendant does not request any instructions referring to a basis of value of the property as controlled or limited by the invoice price or by any special contract or representation, the judgment will not be reversed upon the ground that the case should have been tried upon a different theory than that which was presented to the trial court.

1. Right of shipper or consignee, as against carrier, to refuse to accept goods damaged while in carrier's hands, notes, Ann. Cas. 1914A, 66; 25 L. R. A. (N. S.) 842; 42 L. R. A. (N. S.) 783.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry T. Gage and W. I. Gilbert for Appellant.

Newlin & Ashburn and J. W. McKinley for Respondent.

CONREY, P. J.—This action was brought by plaintiff to recover the sum of $927.50 for alleged damages to a shipment of fifty-three gas furnaces or heaters which were transported over the lines of the defendant company from the city of Los Angeles, California, to Portland, Oregon, consigned to the Portland Gas & Coke Company, at Portland, and there tendered to the consignee. The consignee refused to accept them, it being claimed by the consignee, and now claimed by the plaintiff, that by reason of damages to the property during transportation its value was totally destroyed. Pursuant to the verdict of a jury, plaintiff recovered judgment for the entire amount of the demand. From that judgment the defendant appeals.

Appellant contends that it was the duty of the consignee, and upon failure of the consignee, then the duty of the plaintiff to have received said furnaces upon tender of delivery by the defendant, in order that the damage to the furnaces might be minimized and not unnecessarily enhanced; and that the damages awarded are excessive. [1] The rule governing the duty of a shipper or consignee, where goods are injured in course of shipment, is stated as follows: "As a general rule, the doctrine that where goods are injured the owner may abandon them as for a total loss and sue for their value does not apply to contracts of affreightment. The fact, therefore, that the goods are injured upon the journey, through causes for which the carrier is responsible, does not of itself justify the consignee in refusing to receive them, but he must accept them and hold the carrier responsible for the injury. Where, however, the damage is such that the entire value of the goods is destroyed, the consignee may refuse to receive them and sue the carrier for their value." (Hutchinson on Carriers, 3d ed., sec. 1365.) The consignee having refused to receive

these goods, defendant tendered them to the plaintiff and also made an effort to induce the plaintiff to repair the furnaces to put them in shape for the market. This the plaintiff declined to do. There is evidence tending to show that repairs might have been made which would have resulted in reducing the amount of the damages incurred. [2] On the other hand, according to the testimony of a competent witness, the furnaces, in their condition as received at Portland, had no market value whatever; the repairs necessary to put them in condition to be sold would not have restored more than fifty per cent of their market value, and the cost of the repairs would have been more than that fifty per cent. If the jury believed this evidence, as it was entitled to do, the conclusion must have resulted that the value of the property was totally destroyed; and since the amount of the judgment does not exceed the original market value of the property, appellant's claim that the damages awarded are excessive should not be sustained.

In the brief filed for appellant a general reference is made to various claimed errors of the court, but we will notice only that one concerning which a definite argument has been presented. [3] On the question of measure of damages, the court gave to the jury the following instruction: "The measure of damages is the difference between the market value of the heaters at Portland, Oregon, at the time of their arrival in that city in the damaged condition in which they arrived, and the market value which they would have had at such time and place if they had arrived uninjured." Appellant now contends that the measure of damages in this case was controlled and limited by the provisions contained in the bill of lading, which provided for a measurement of loss or damages on the basis of the value of the property tested by the *bona fide* invoice price, if any, to the consignee, including freight charges, if prepaid, unless, etc. In this connection it should be noted that the court further instructed the jury that "the measure of damages for injury to personal property is the difference in value of the property immediately before and after the injury, provided, however, that if the injury be capable of repair, so as to restore the full value of the property at an expense less than diminution in value of the property as injured, the damage is limited to the cost of making such re-

pair." It further appears that at the trial the defendant did not request the court to give any instructions referring to a basis of value of the property as controlled or limited by the invoice price or by any special contract or representation; on the contrary, the instructions requested by the defendant stated rules having reference to the market value of the property. The case was tried on the theory that defendant was to be bound by its ordinary liability as a common carrier. No special contract relieving defendant from that liability was set forth in the answer. This should have been done if that defense was to be relied upon. (*Michalitschke* v. *Wells, Fargo & Co.*, 118 Cal. 683, [50 Pac. 847].) The judgment should not now be reversed upon the ground that the case should have been tried upon a different theory than that which was presented to the trial court.

The judgment is affirmed.

Shaw, J., and James, J., concurred.